The case before us involves several appeals from certain judgments of the Franklin County Court of Common Pleas, Probate Division, involving matters relating to the guardianship of Judith A. Sechler. The appeals have been consolidated for our review.
The guardianship of Ms. Sechler began in 1990. In October 1991, Anne Robbins was appointed successor guardian of Ms. Sechler's estate and person. A concealment of assets action was filed by Ms. Robbins against Lorraine Furtado, the attorney for a former guardian.
On May 28, 1993, the probate court filed a judgment entry, finding Ms. Furtado guilty of embezzling assets belonging to Ms. Sechler's guardianship. Ms. Furtado was ordered to pay the guardianship $27,902.72. The probate court also indicated Ms. Robbins would recover the costs of the action, including attorney fees.
On June 19, 1995, the probate court granted Ms. Furtado attorney fees and agreed to allow an offset of such fees from the judgment against Ms. Furtado. Ms. Robbins resigned as guardian on July 28, 1995. On August 8, 1995, George Sheehan, Ms. Robbins' attorney, was granted attorney fees of $4,319.55 for services rendered as a direct benefit to Ms. Sechler. Rita Market was appointed guardian of Ms. Sechler's person only because of a conflict among family members, Ms. Furtado and Ms. Market. Attorney R. Douglas Wrightsel was appointed as guardian of the estate.
In the meantime, an appeal was filed by Ms. Furtado from the concealment/embezzlement judgment against her. As a result of settlement negotiations involving Ms. Robbins, Ms. Furtado, Mr. Sheehan, Leslie I. Sechler, M.D., and Mary Ellen Potter (Ms. Sechler's brother and sister, respectively), a settlement agreement was reached. This court approved the settlement agreement and remanded the matter to the probate court to approve it and file an agreed judgment entry.
On August 29, 1995, an agreed judgment entry was journalized which, among other things, approved the settlement agreement and incorporated such, in full, into the agreed judgment entry.
While it was the clear intention of the probate court that this settled the matters, various issues arose and appeals ensued. The matters currently before this court involve: the removal of Ms. Market as guardian of the person; the awards of guardian compensation and costs to Ms. Market; issues relating to the attorney fees awarded to Mr. Sheehan; the status of the settlement agreement; and the judgments against Ms. Furtado and Ms. Potter for contempt.
We will first address Ms. Market's appeal. Ms. Market assigns the following errors for our consideration:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ACTED CONTARY TO LAW, ABUSED ITS DISCRETION AND PREJUDICED THE GUARDIAN OF THE PERSON WHEN IT REFUSED TO REIMBURSE THE GUARDIAN OF THE PERSON FOR THE COURT COSTS, (SOME OF WHICH THE COURT HAD PREVIOUSLY APPROVED), SHE INCURRED ON BEHALF OF HER WARD.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ACTED CONTRARY TO LAW, ABUSED ITS DISCRETION AND PREJUDICED THE GUARDIAN OF THE PERSON WHEN IT DENIED THE GUARDIAN OF HER PERSON'S APPLICATIONS FOR GUARDIAN'S COMPENSATION.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ABUSED ITS DISCRETION, ACTED AGAINST THE WARD'S BEST INTEREST, AND PREJUDICED THE WARD WHEN IT REMOVED THE GUARDIAN OF THE PERSON.
ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRED TO THE WARD'S PREJUDICE, ABUSED ITS DISCRETION, ACTED CONTRARY TO LAW AND WITHOUT JURISDICTION WHEN IT "ASSIGN[ED] THIS INDEBTEDNESS [SHEEHAN'S ATTORNEY FEES AND EXPENSES] TO THE GUARDIAN OF THE ESTATE" AND APPROVED THE PAYMENT OF SHEEHAN'S ATTORNEY FEES AND EXPENSES FROM HER ESTATE.
In her first assignment of error, Ms. Market contends the probate court erred in not granting her motion for costs. Ms. Market asserts that as guardian of the person, she was required to expend funds to fulfill her duties. Ms. Market states she presented the court with receipts and detailed explanations of the costs requested.
We note that the probate court did award Ms. Market a portion of the costs requested. The probate court granted Ms. Market $151 and stated many of the costs requested were not for the benefit of the ward, not approved by the court, and not appropriate expenses. In essence, the costs requested by Ms. Market consisted of court costs. We find no error in the probate court's award of costs to Ms. Market.
A ward's estate is protected by the discretionary power of the probate court to determine that expenses were incurred in good faith and were reasonable, necessary and beneficial. SeeBrown v. Haffey (1994), 96 Ohio App.3d 724, 730. This court will not disturb the probate court's judgment on such matters absent an abuse of discretion. An abuse of discretion connotes more than error of law; it implies the court's attitude was unreasonable, arbitrary or unconscionable. Id. at 729, quotingWorthington v. Worthington (1986), 21 Ohio St.3d 73.
As guardian of the person only, Ms. Market's duties were limited to those set forth in R.C. 2111.13(A), which include protection and control of the ward's person and suitable maintenance for the person. In contrast, the guardian of the estate is required, in part, to manage the estate of the ward, appear for and defend in all suits against the ward and bring suit on behalf of the ward. R.C. 2111.14.
An example of expenses that have been allowed in relation to the maintenance of the ward's person is medical expenses. SeeMaylin v. Cleveland Psychiatric Institute (1988), 52 Ohio App.3d 106,109. Any legal expenses incurred by the guardian of the person must directly benefit the estate or the ward in order to be chargeable to the estate. In re Wonderly (1984),10 Ohio St.3d 40, 42. However, given the varying duties between a guardian of the estate and a guardian of the person, most legal expenses are borne by the guardian of the estate, who is specifically authorized to bring suit for the ward and appear and defend on behalf of the ward in suits. Hence, attendant legal expenses, including court costs, may be recovered by the guardian of the estate. See In re Guardianship of Jadwisiak
(1992), 64 Ohio St.3d 176, 180.
As indicated above, the requested costs consisted basically of court costs incurred by Ms. Market for various filings. It is clear from the transcript of the July 31, 1998 hearing on Ms. Market's motion for costs that the probate court found most of these expenses unnecessary for the maintenance of the ward and related to matters that would normally involve the duties of the guardian of the estate. (See January 31, 1998 Tr. 13-21, 27-30.) Indeed, we are unable to discern how such filings were related to the comfort and care of Ms. Sechler. The probate court did, however, approve costs that arguably were related to the maintenance of the ward's person, such as costs relating to the filing of a psychiatrist's report.
The granting of such costs is left to the sound discretion of the probate court, and we find no abuse of such discretion. Therefore, this court will not disturb the probate court's findings and award with regard to costs requested by Ms. Market.
Accordingly, Ms. Market's first assignment of error is overruled.
In her second assignment of error, Ms. Market contends the probate court erred in denying her application for guardian's compensation. Ms. Market asserts that an award of $100 for three years of service was contrary to the law and the evidence. Counsel for the estate argues it was wrong for Ms. Market to base her request for compensation on the fee schedule set forth in Loc.R. 42. 1(A) of the Franklin County Court of Common Pleas, Probate Division. For the following reasons, we affirm the probate court's granting of $100 to Ms. Market for guardian's compensation.
The compensation Ms. Market sought was distinct from the costs she requested and which were the subject of the first assignment of error. The so-called "guardian's compensation" Ms. Market requested was for the basic services rendered as guardian of the person. Apparently, Ms. Market based the amount requested on a fee schedule set forth in Loc.R. 42.1(A). Such rule states, in pertinent part:
 Guardians' compensation shall be computed annually upon application and entry and shall be supported by calculations and documentation. The following fee schedule shall apply unless extraordinary fees are requested. Extraordinary fee applications shall be set for hearing unless waived by the Court.
The rule then goes on to set forth allowable fees which are, essentially, based upon percentages of income received and of the fair market value of the principal of the estate.
The probate court indicated that it would not apply Loc.R. 42.1(A)'s structure to the issue of Ms. Market's guardian compensation, stating such structure is meant to calculate compensation for the guardian of the estate who is charged with managing the assets of the estate. (See July 31, 1998 Tr. 13-14, 37.) In this court's view, it is questionable whether the Loc.R. 41.2(A) calculations apply to compensation for services rendered by a guardian of the person only.
As stated by counsel for the estate, the duties of a guardian of the estate and a guardian of the person are distinct, and one of the main functions of the guardian of the estate is overseeing the financial affairs of the estate. Loc.R. 41.2(A) basis its calculations on the assets of the estate, which the guardian of the estate manages. Hence, it is reasonable to conclude that guardianship compensation based upon Loc.R. 41.2(A)'s fee structure would apply only to services rendered by a guardian of the estate.
S.Ct.R. 73 of the Rules of Superintendence for the Courts of Ohio supports this conclusion. S.Ct.R. 73 states:
 (A) Guardian's compensation shall be set by local rule.
 (B) Additional compensation for extraordinary services, reimbursement for expenses incurred and compensation of a guardian of a person only may be allowed upon an application setting forth an itemized statement of the services rendered and expenses incurred and the amount for which compensation is applied.
* * *
 (D) The court may deny reduce compensation if * * * the court finds the guardian has not faithfully discharged the duties of the office. (Emphasis added.)
S.Ct.R. 73 distinguishes between regular guardian's compensation (S.Ct.R. 73[A]) and compensation and reimbursement for a guardian of the person only (S.Ct.R 73[B]). Loc.R. 42.1(A) states the fee schedule applies unless extraordinary fees are requested. Relating back to S.Ct.R. 73(B) which addresses "extraordinary services" of a guardian of the person only, it follows that the fee schedule in Loc.R. 42.1(A) does not apply to a guardian of the person only.
Hence, while Loc.R. 42.1(A) makes available guardian's compensation for both types of guardians, the fee schedule applies only to services rendered as guardian of the estate. Therefore, the probate court did not err in failing to base Ms. Market's guardian's compensation on such fee schedule.
Rather, it was within the probate court's discretion to award Ms. Market guardian's compensation. As stated in S.Ct.R. 73(D), the probate court may deny or reduce compensation if it finds the guardian has not faithfully discharged his or her duties. Here, the evidence was that Ms. Market rarely saw or communicated with Ms. Sechler. Therefore, the trial court was within its discretion to award Ms. Market $100 as guardian's compensation.
Accordingly, Ms. Market's second assignment of error is overruled.
In her third assignment of error, Ms. Market contends the probate court erred in removing her as guardian of the person. In matters relating to guardianships, the probate court is required to act in the best interest of the ward. In re Estateof Bednarczuk (1992), 80 Ohio App.3d 548, 551. It is within the probate court's discretion whether or not to remove a guardian, and the court need only find that the best interest of the ward will be served by the guardian's removal. In re Guardianship ofEscola (1987), 41 Ohio App.3d 42, 44.
Here, the probate court removed Ms. Market and appointed Mr. Wrightsel guardian of the person. The court stated Mr. Wrightsel was already performing the services of a guardian of the person. (July 31, 1998 Tr. 37.) The trial court obviously felt that unity in the guardianship was necessary given the litigious behavior arising out of the administration of the guardianship. Id. at 38. In addition, the evidence before the probate court indicated that, at the time of the hearing, Ms. Market had not seen Ms. Sechler in over a year and had not communicated with her for months. Id. at 15-16, 32. In contrast, Mr. Wrightsel's office was in touch with Ms. Sechler on a regular basis (more than once per month on average). Id.
at 34-35.
Given the above, the probate court did not abuse its discretion in removing Ms. Market as guardian of the person and in appointing Mr. Wrightsel to that position. Accordingly, Ms. Market's third assignment of error is overruled.
In her fourth and final assignment of error, Ms. Market contends the probate court erred and acted without jurisdiction in approving payment of Mr. Sheehan's attorney fees and expenses from the estate and in assigning the indebtedness of such to the guardian of the estate. As background, the probate court granted Mr. Sheehan $4,319.55 in attorney fees and expenses on August 8, 1995. As a result of the settlement agreement and August 29, 1995 agreed judgment entry, Ms. Furtado agreed to pay such amount to Mr. Sheehan. Ms. Furtado did not so pay and, on June 29, 1998, she was held in contempt for such failure. On this same date, the court granted Mr. Sheehan's oral motion that his attorney fees be paid by the estate and that Ms. Furtado's obligation to pay such be assigned to the guardian of the estate.
Counsel for the estate argues Ms. Market lacks standing to challenge the probate court's actions with regard to Mr. Sheehan's attorney fees. We agree. Ms. Market was the guardian of the person only. As already discussed, a guardian of the person has limited duties. None of the duties in R.C. 2111.13
entitles a guardian of the person to bring a suit on behalf of the ward. The person responsible for such is the guardian of the estate. Maylin, supra, at 108. See, also, Sechler v. Market
(Dec. 24, 1996), Franklin App. No. 96APF03-359, unreported (1996 Opinions 5001) (it is a general principle the fiduciaries may not appeal judgments that do not affect them prejudicially in their representative capacity). Along these same lines, a guardian of the person is not responsible to appeal issues involving financial matters. Of course, given our disposition of Ms. Market's third assignment of error, she is no longer even the guardian of the person.
Accordingly, we find Ms. Market lacks standing to appeal the probate court's judgment regarding Mr. Sheehan's attorney fees and, as such, her fourth assignment of error is rendered moot.
We now turn to the appeals of Ms. Furtado and Ms. Potter (hereinafter collectively referred to as "appellants"). In their first assignment of error, appellants contend the probate court erred in enforcing the provisions of a settlement agreement that was never made an order of the court. Appellants also contend the court erred in its adoption of the settlement agreement. Counsel for the estate asserts, at least as to the issue of the validity of the settlement agreement, that such issue is res judicata.
In Sechler v. Furtado (Sept. 30, 1997), Franklin App. No. 97APF04-535, unreported (1997 Opinions 4040, 4047) ("FurtadoII"), this court found that, given our opinion in Sechler v.Furtado (Apr. 26, 1996), Franklin App. No. 95APF09-1143, unreported (1996 Opinions 1618, 1627), the issue of the validity of the agreed judgment entry, along with the incorporated settlement agreement was res judicata, and the agreement was binding and valid. Of course, such issue remainsres judicata and, as such, we will not address it.
As to appellants' contentions regarding whether the probate court made the settlement agreement an order of the court, we find that it did. The August 29, 1995 agreed judgment entry stated, in part:
 * * * [B]ased upon the agreement of the parties and the evidence, the Court find and orders as follows:
* * *
 * * * the [parties] * * * have entered into a separate Settlement Agreement, which is approved by the Court, and is incorporated herein as if fully rewritten. (Emphasis added.)
This constituted an order of the court, including the provisions of the settlement agreement that were fully incorporated into the agreed judgment entry.
Given all of the above, appellants' first assignment of error is overruled.
Appellants' second, third, seventh and ninth assignments of error will be addressed together. Appellants set forth various arguments in relation to the probate court's contempt proceedings against them.[1] In essence, the probate court found appellants in contempt for failing to comply with the August 29, 1995 agreed judgment entry.
First, appellants contend this court in Furtado II ruled that the probate court lacked jurisdiction to enforce the settlement agreement. This contention is incorrect. In such opinion, we merely stated that it was improper for the probate court, in ruling on motions to enforce the agreed judgment entry, to hold appellants in contempt and impose sanctions without first following the procedures outlined in R.C. 2101.23, 2705.03 and 2705.05 (procedures for providing written notice of the charges and an opportunity to be heard). Furtado II at 4048. We specifically stated that the judgments enforcing the agreed judgment entry were affirmed except to the extent they found contempt and imposed sanctions. Id.
Therefore, the probate court does have jurisdiction to enforce the agreed judgment entry which incorporated the settlement agreement, as long it provided the proper notice and opportunity to be heard. No party alleges this was not done on remand, and the record reflects that the applicable statutes were followed.
Appellants next contend that the probate court had no authority to compel them to act because they were not fiduciaries. Appellants point to R.C. 2101.23, the statute that authorizes the probate court to conduct contempt proceedings. R.C. 2101.23 states, in pertinent part:
 The probate judge may keep order in his court and has authority throughout the state to compel performance of any duty incumbent upon any fiduciary appointed by or accounting to him. * * * (Emphasis added.)
This particular portion of the statute gives the probate court the authority to compel only upon fiduciaries appointed by or accounting to it those duties required of fiduciaries. Hence, if a fiduciary (such as a guardian of the person) does not perform a duty required under R.C. 2111.13, the probate court can compel the fiduciary to perform such duty, whether there is an order to do so or not. This particular part of R.C.2101.23 does not apply to appellants because they are not fiduciaries.
However, R.C. 2101.23 goes on to state:
 If a person neglects or refuses to perform an order or judgment or a probate court, other than for the payment or money, he shall be guilty of a contempt of court and the judge shall issue a summons directing such person to appear before the court, within two days from the service thereof, and show cause why he should not be punished for contempt. * * * (Emphasis added.)
Hence, the probate court has the authority to conduct contempt proceedings against any person, whether a fiduciary or not, who fails to perform an order or judgment of the court. Appellants, therefore, are subject to this provision, and the probate court properly conducted contempt proceedings against them.
In their final argument, appellants contend the probate court lacked the authority to use contempt proceedings to enforce provisions of the settlement agreement that called for the payment of money. As indicated above, R.C. 2101.23 states that a person is in contempt if he or she fails to perform "* * * an order or judgment of a probate court, other than for thepayment of money * * *." (Emphasis added.) Appellants contend they were found in contempt for failing to perform acts which called for the payment of money. We disagree.
As to Ms. Potter, the probate court found her in contempt for failing to follow a provision in the settlement agreement that called for her to be paid $10,000 from the estate which would satisfy a certain note and mortgage on the ward's residence. Ms. Potter received a check for $10,000 but refused to cash it and release the mortgage.
This provision of the settlement agreement does not call for the payment, by Ms. Potter, of money. Rather, it calls for Ms. Potter to receive money and then release a mortgage. Hence, the prohibition in R.C. 2101.23 regarding contempt and orders for the payment of money does not apply to the proceedings against Ms. Potter.
Ms. Furtado was found in contempt for her failure to pay, as provided for in the settlement agreement, $4,319.55 to Mr. Sheehan. While this is arguably an order or judgment calling for the payment of money, we find that it is not an order for the payment of money as contemplated by R.C. 2101.23.
There is little case law interpreting this provision of R.C.2101.23. We do note that in In re Contempt of Court (1972),30 Ohio St.2d 182, the Supreme Court of Ohio held that under R.C.2101.23, which limits the contempt jurisdiction of the probate court to instances of neglect of or refusal to perform orders or judgments other than for the payment of money, an order to compel an increase in salaries was not enforceable by contempt proceedings. The Supreme Court stated that R.C. 2101.23 gives a probate judge the same contempt power as other common pleas court judges except where the probate court seeks performance of an order or judgment for the payment of money. Id. at 186. The Supreme Court further stated that R.C. 2101.23's language is broad and unqualified and covers all instances where the payment of money is desired. Id. at 188.
However, in State ex rel. Edwards v. Murray (1976), 48 Ohio St.2d 303,305, the Supreme Court stated that it had to reexamine the decision in In re Contempt of Court. State exrel. Edwards involved a very similar fact pattern (the probate court sought to compel the board of county commissioners to appropriate funds to it). The Supreme Court overruled the holding in State ex rel. Edwards and stated that where the basic function of a court is impeded by a failure or refusal of the responsible body to provide a necessary appropriation, such court possesses the inherent power to order such appropriation and enforce the order by contempt proceedings. Id. at 305. The Supreme Court stated that if R.C. 2101.23 were read as to limit the probate court's jurisdiction to enforce the particular order, the statute would exceed legislative authority. Id.
We recognize that the fact pattern here is distinguishable from that in State ex rel. Edwards. Obviously, a lack of funds directly impedes a court's basic functioning. However, it is important to note that State ex rel. Edwards overruled the holding in In re Contempt of Court that R.C. 2101.23 limits the jurisdiction of the probate court to enforce an order for the payment of money by contempt proceedings. See State ex rel.Edwards at 305.
Two other cases are more closely related to the facts herein. In In re Jadwisiak, supra, the probate court had ordered an attorney to remit to the court attorney fees (from settlement proceeds) he had received. Id. at 176. The attorney had represented the guardian in a product liability claim. The attorney refused to remit the funds and was found in contempt.
The Supreme Court found that the probate court had subject-matter jurisdiction over a ward's settlement funds and had the authority to order the remittance of such funds.Id. at 181. Further, the probate court properly enforced its order in contempt proceedings. Id. Such power is conferred by R.C. 2101.23 which provides that a probate judge may punish any contempt of his authority as such contempt might be punished in the court of common pleas. Id.
We are aware that the court in In re Jadwisiak did not directly address the provision in R.C. 2101.23 at issue herein. However, one could argue that the order of the probate court to remit the settlement funds was an order for the payment of money. The Supreme Court was presumably aware of the provision in R.C. 2101.23 regarding such types of orders. However, because the probate court had jurisdiction over the funds ordered to be remitted and given its general contempt power under R.C. 2101.23, the contempt proceedings were found proper.
In In re Guardianship of Brisboy (1994), 94 Ohio App.3d 361, the court of appeals for Huron County did directly address the provision of R.C. 2101.23 at issue herein. In In reGuardianship of Brisboy ("Brisboy"), an attorney for the guardian received a portion of settlement money as attorney fees. The probate court ordered he return the money, and the attorney was found in contempt for failing to comply with this order.
The attorney argued that the authority of the probate court under R.C. 2101.23 to punish for contempt was limited and excluded a finding of contempt for his refusal to return the money. Id. at 364. The Brisboy court cited In re Jadwisiak and noted the Supreme Court considered R.C. 2101.23 in making its ruling. Id. at 365. The Brisboy court found that, as in In reJadwisiak, the orders in question were not orders "for the payment of money" but were orders to return funds improperly disbursed. Id. at 366.
We find the order of the probate court directing Ms. Furtado to comply with the agreed judgment entry (which incorporated the settlement agreement) was not an order "for the payment of money" as contemplated by R.C. 2101.23. The settlement agreement arose directly out of the embezzlement/concealment action against Ms. Furtado, an action that clearly affected the guardianship. The probate court had jurisdiction over the matters involved in the agreed judgment entry and, as the superior guardian pursuant to R.C. 2111.50, was under a duty to ensure compliance with the agreed judgment entry. Therefore, the order was not an order for the payment of money in the ordinary sense. Rather, it was an order to comply with an agreed judgment entry that was properly before the probate court. Hence, the probate court had the authority under R.C.2101.23 to enforce such order through contempt proceedings.
Accordingly, appellants' second, third, seventh and ninth assignments of error are overruled.
In their fourth, eighth, and tenth assignments of error, appellants contend the probate court erred in imposing a $100 fine for each day they continued to be in contempt. Appellants argue that R.C. 2705.05(A)(1) limits the fine that may be imposed. R.C. 2705.05(A)(1) authorizes a court, for a first contempt offense, to impose a fine of not more than $250 and/or a definite term of imprisonment of not more than thirty days.
However, in Zakany v. Zakany (1984), 9 Ohio St.3d 192, syllabus, the Supreme Court held that a court has authorityboth under R.C. 2705.02(A) and on the basis of its inherent powers to punish disobedience of its orders with contempt proceedings. In Cincinnati v. Cincinnati District Council 51
(1973), 35 Ohio St.2d 197, 207, the Supreme Court stated that it was highly doubtful the legislature could properly limit the power of a court to punish for contempt.
This court and others have held that a court's power to punish contempt by way of a penalty is not limited by the express monetary penalties set forth in R.C. 2705.05. SeeWhitehall v. Bambi Motel, Inc. (Dec. 18, 1997), Franklin App. No. 97APC04-539, unreported (1997 Opinions 5307, 5315) (sanction, among others, of a daily fine for each future day of noncompliance was not barred by R.C. 2705.05); McDaniel v.McDaniel (1991), 74 Ohio App.3d 577, 579 (court may punish contemptuous acts pursuant to its inherent powers and without regard to the statutory penalties); Moraine v. Steger Motors,Inc. (1996), 111 Ohio App.3d 265, 269; Olmsted Twp. v. Riolo
(1988), 49 Ohio App.3d 114, 116-117. Hence, the probate court did not exceed its authority in imposing the fines herein.
Rather, we review the probate court's imposition of penalties under an abuse of discretion standard. See Arthur Young Co.v. Kelly (1990), 68 Ohio App.3d 287, 294. Here, the unrefuted evidence was that appellants were not in compliance with the probate court's orders. The agreed judgment entry was filed in August 1995. Appellants had been ordered to comply on February 5, 1997 and March 20, 1997, respectively. Over one year later, they had not complied. The probate court was within its discretion in imposing the penalties at issue herein.
Appellants also argue the probate court should have first determined whether or not they could comply with the orders. Impossibility of compliance is an affirmative defense for which the alleged contemnor has the burden of proof. Olmsted Twp. at 117, citing Smedley v. State (1916), 95 Ohio St. 141, 143. However, appellants presented no evidence of impossibility of compliance. We note that mere statements by counsel do not constitute such evidence.
Having found no abuse of discretion, appellants' fourth, eighth and tenth assignments of error are overruled.
In their fifth and sixth assignments of error, appellants contend the probate court erred in granting Mr. Sheehan's oral motion that his attorney fees, which were supposed to be paid by Ms. Furtado pursuant to the agreed judgment entry, be paid by the estate and that Ms. Furtado then be indebted to the estate for the amount. We find the probate court acted properly in so assigning, and there was no abuse of discretion.
Mr. Sheehan's fees had originally been approved by the probate court and would normally have been paid out of guardianship funds. However, the events involving Ms. Furtado and guardianship assets arose and resulted in Ms. Furtado agreeing to pay Mr. Sheehan's attorney fees. Over five years after Mr. Sheehan had provided services for the benefit of the ward, he had still not been paid. The guardian of the estate approved the payment to Mr. Sheehan from the estate and informed the probate court that the estate had sufficient assets to so pay. (June 29, 1998 Tr. 12.)
Given the facts of this case, it was within the probate court's power and discretion to order the estate pay Mr. Sheehan's attorney fees and that Ms. Furtado be obligated to pay the estate such amount. Accordingly, appellants' fifth and sixth assignments of error are overruled.
In summary, Ms. Market's first, second and third assignments of error are overruled. Ms. Market's fourth assignment of error is moot. All of appellants' assignments of error are overruled. The judgments of the Franklin County Court of Common Pleas, Probate Division, are affirmed.
Judgments affirmed.
LAZARUS, P.J., and PETREE, J., concur.
[1] Dr. Sechler was originally subject to contempt proceedings. However, the probate court found Dr. Sechler had complied with the agreed judgment entry/settlement agreement. (See August 28, 1998 Tr. 2-3.)