IN RE GUARDIANSHIP OF JADWISIAK; MARTIN,
APPELLANT; JADWISIAK, APPELLEE.

[Cite as *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176.]

(No. 91–723—Submitted February 25, 1992—Decided July 15, 1992.)

178

*Watkins, Bates, Carey & McHugh* and *John J. McHugh III*, for appellant.
*Kline & Corogin Co., L.P.A.*, and *Dale A. Kline*, for appellee.

HARPER, J.  Appellant premises this appeal on the need for a trial court to possess both subject matter and personal jurisdiction in order to resolve disputes.  Noting that a court acquires personal jurisdiction either by service of process or by a voluntary appearance, appellant asserts that the probate court had not acquired personal jurisdiction over him at the time of the March 2, 1988 order, as he had not been served with process nor had he made an appearance.  Appellant once again cites *State ex rel. Ballard v. O'Donnell, supra*, as controlling.  Moreover, appellant asserts that the probate court was without subject matter jurisdiction to determine the propriety of a fee-splitting agreement between counsel, and to order the remittance of attorney fees that were not a part of the ward's estate once the probate court approved of the settlement.  He thus argues that the March 2, 1988 order is void as a matter of law and that contempt cannot be used to enforce a void order.

## I

The first question we must address is whether the probate court had subject matter jurisdiction over the entire amount of settlement funds where the dispute over the funds related to a division of attorney fees.

The jurisdiction of the probate court was defined in former R.C. 2101.24 as follows:

"(A) Except as otherwise provided by law, the probate court has exclusive jurisdiction:

" * * *

"(4) To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;

" * * *

"(13) To direct and control the conduct of fiduciaries and settle their accounts;

" * * *

"(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by statute." Am.Sub.S.B. No. 135 (141 Ohio Laws, Part I, 357). See current R.C. 2101.24(A)(1)(d) and (i), and (c).

R.C. 2111.13 and 2111.14 set forth the duties of guardians. A guardian must "obey all the orders and judgments of the probate court touching the guardianship." R.C. 2111.13(A)(4); accord R.C. 2111.14(D).

The court having jurisdiction of the guardianship matter is superior guardian, while the guardian himself is deemed to be an officer of the court. *In re Clendenning* (1945), 145 Ohio St. 82, 93, 30 O.O. 301, 305–306, 60 N.E.2d 676, 681. The state's interest in the guardianship is effectuated by the extension of the probate court's jurisdiction to all matters "touching the guardianship." *In re Zahoransky* (1985), 22 Ohio App.3d 75, 22 OBR 173, 488 N.E.2d 944. Thus, jurisdiction in the case *sub judice* depends upon whether the order of remittance "touches the guardianship."

R.C. 2111.14(E) provides that a guardian may bring suit for his ward when such suit is for the best interests of the ward. The guardian also may adjust and settle the claim with the advice, approval and consent of the probate court. R.C. 2111.18.

It thus follows that a guardian can employ legal counsel to initiate or defend a lawsuit. *In re Wonderly* (1984), 10 Ohio St.3d 40, 10 OBR 304, 461 N.E.2d 879. "Approval by the probate court of the contract employing legal counsel must be obtained in order to bind the ward or his estate, since R.C. 2111.13 provides that, '[n]o part of the ward's estate shall be used for the support, maintenance, or education of such ward unless ordered and approved by the court.'" *Id.* at 43, 10 OBR at 307, 461 N.E.2d at 882 (Holmes, J., concurring in part and dissenting in part). "[T]he attendant legal expenses, including attorney fees and court costs, may be recovered by the guardian

*from the assets of the estate.*" (Emphasis added.) *Id.* at 42, 10 OBR at 305, 461 N.E.2d at 881 (*per curiam* opinion). See, *e.g.,* R.C. 2113.36; see, also, C.P.Sup.R. 39 and 40.

At the core of this case is the requirement that a probate court maintain control over any personal injury settlement entered into on behalf of the ward under the probate court's protection. See R.C. 2111.18. Appellant interfered with the probate court's function of controlling the ward's settlement proceeds by keeping over half of the proceeds as attorney fees and distributing the remainder to the guardian without the probate court's approval of the settlement.

We hold that a probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom. The probate court had the inherent power to order, *ex parte,* appellant to remit the ward's settlement proceeds in his possession so that it could carry out its statutory obligations. The entire settlement of over $1,000,000 was part of the ward's estate. Without the total settlement proceeds, the probate court could not maintain control over the settlement as required by R.C. 2111.18. In addition, as already stated, although attorney fees are appropriate, they may be drawn from the ward's estate only after the probate court approves the fees. Therefore, prior to the order, the probate court was unable to perform its statutory duties since it never had the ward's total settlement proceeds in its possession. Appellant's argument that his portion of the attorney fees was never a part of the ward's estate is, therefore, without merit.

The probate division of the court of common pleas has a responsibility to protect the estate of a ward as directed by law. R.C. 2111.18. " * * * It follows, then, that the court may enforce its duty to maintain * * * [the ward's estate] * * * through *ex parte* orders just as this court has held that it may do so in relation to its other responsibilities. * * * " *State ex rel. Wolff v. Donnelly* (1986), 24 Ohio St.3d 1, 4, 24 OBR 1, 4, 492 N.E.2d 810, 813. Rather than being unauthorized, the probate court's exercise of judicial power was required by law.

The probate court properly enforced its own order in a contempt proceeding. That power is conferred by R.C. 2101.23, which provides:

"The probate judge may keep order in his court and has authority throughout the state to compel performance of any duty incumbent upon any fiduciary appointed by or accounting to him. The probate judge may punish any contempt of his authority as such contempt might be punished in the court of common pleas."

R.C. 2705.02 furthermore provides:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]"

Finally, R.C. 2705.03 sets forth the following:

"In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings."

Under this latter section, "[n]otice which apprises the defendant of the nature of the charge against him so that he may prepare a defense is sufficient to comply with the requirements of R.C. 2705.03." *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 64 O.O.2d 129, 299 N.E.2d 686, at paragraph two of the syllabus, certiorari denied (1974), 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 892. The "sufficient notice" requirement is met by service of the order or service of a show cause order. *Id.* at 203, 64 O.O.2d at 133, 299 N.E.2d at 692. See, also, *State ex rel. Beil v. Dota* (1958), 168 Ohio St. 315, 7 O.O.2d 36, 154 N.E.2d 634.

The appellate court, therefore, properly concluded that (1) the *ex parte* order of March 2, 1988 to remit the settlement proceeds was required by law, (2) the probate court could thus hold appellant in contempt for not complying with that order, and (3) appellant was notified of the contempt charge by receiving a show cause order.

## II

The probate court, however, not only ordered appellant to remit the $550,000 to the court in its March 2, 1988 journal entry, but also confirmed the fifty-fifty fee-splitting agreement between appellant and Ohio counsel. The probate court in subsequent orders reaffirmed this determination by ordering appellant to remit only $275,000 of the $550,000, thus negating any earlier indication that it needed all of the settlement proceeds to carry out its statutory obligations. Thus, the next issue before this court is whether the probate court was without personal jurisdiction to confirm the fee-splitting agreement because of insufficiency of process.

"Due process requires, at a minimum, that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing

\* \* \*. The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardship of a criminal conviction, is a principle basic to our society. Where a person's good name, reputation, honor or integrity is at state, he is entitled to notice and an opportunity to be heard before judgment can be entered against him. \* \* \* " *Ballard, supra,* 50 Ohio St.3d at 183, 553 N.E.2d at 652.

The appellate court erred in interpreting the March 2, 1988 order. The court stated in its journal entry:

" \* \* \* In this case, the *ex parte* March 2, 1988 order was not a final determination as to how fees were to be split between the attorneys. This is made apparent by the March 2, 1988 order itself, which provides that the *entire* balance of the fund be remitted to court rather than only fifty percent thereof as was ordered by the October 26, 1988 order, and by the court continuing the matter for further hearing. \* \* \* " (Emphasis *sic.*)

Contrary to the appellate court's interpretation, the March 2, 1988 order succinctly stated:

"The Court further finds, upon representations of the Guardian and of Dale A. Kline, Attorney herein, and the evidence, that Kline and Corogin and Peter W. Martin, Florida Co-counsel, agreed to split the attorney fees charged herein on a 50–50 basis; that Ohio law permits attorneys to reach an agreement among themselves as to the division of fees; and that this arrangement is common in the area for this type of case and was followed by the attorneys, irrespective of the time spent on individual segments of the case, in the partial settlement herein in October, 1984. *The Court hereby ratifies and confirms said 50–50 fee split.*" (Emphasis added.)

There is no doubt that the probate court initially intended to receive the $550,000 and evidence of all advances in order to determine the total amount of attorney fees for both Ohio counsel and appellant pursuant to C.P.Sup.R. 39 and 40 and R.C. 2111.18. No matter what the final determination was as to the amount of attorney fees to be awarded to both Ohio counsel and appellant, the probate court restricted appellant to only a fifty percent share of the yet to be determined attorney fees. The March 2, 1988 order does not reveal, as suggested by the appellate court, that the probate court was ever going to alter its ruling that appellant was entitled to a fifty percent share.

The March 2, 1988 order, insofar as it determined appellant's rights under the fee-splitting agreement, violated the preceding concept of due process. The probate court made this determination without affording appellant any notice or opportunity to be heard; notice was sent to appellant only after the probate court made its determination. The appellate court clearly and properly recognized in appellant's first appeal that the order affected a substantial

right, *i.e.,* appellant's right to compensation. See *In re Guardianship of Wolfe* (P.C.1938), 14 O.O. 525, 526, 1 Ohio Supp. 372, 373. The probate court's approval of the fee-splitting agreement violated appellant's right to due process by depriving him of property without notice or opportunity for hearing. See *Ballard, supra.* This portion of the probate court's order is therefore void. *State ex rel. Beil, supra,* 168 Ohio St. at 319, 7 O.O.2d at 39, 154 N.E.2d at 638. If the order is void, the violation of the order is not contempt. *State v. Mason* (1937), 57 Ohio App. 30, 10 O.O. 23, 11 N.E.2d 273.

In conclusion, the appellate court's finding that the March 2, 1988 order was *in rem* as to both the order to remit the funds and the confirmation of the fifty-fifty split and thus did not require service or notice is not supported by the record or the law. The order was a proper *in rem, ex parte* order only as to the order to remit the funds, not as to the confirmation of the fifty-fifty split. The appellant's appearance in the county or any after-the-fact justifications for the exercise of personal jurisdiction does not alter the fact that when the probate court issued its March 2, 1988 order, the court was without personal jurisdiction over appellant on the issue of the fee-splitting agreement.

Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

SARA J. HARPER, J., of the Eighth Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring in part and dissenting in part. I am in agreement with paragraph one of the syllabus here and the opinion as it relates to the law pronounced in such syllabus, but am in disagreement with the law expressed in paragraph two of the syllabus as applied to the facts in this case.

In order for the probate court to fulfill its statutory duties to protect the estate of the ward in exercising complete control over the settlement, the court had inherent power to order *ex parte* that the entirety of the settlement proceeds be sent to the guardian.

The probate court also has subject matter jurisdiction over the determination of attorney fees connected with such a settlement. This jurisdiction would pertain not only to the total amount of such fees, but also the approval

of any fee apportionment among attorneys representing the guardianship estate.

In my view, jurisdiction over all of the funds, inclusive of attorney fees and their distribution, is clearly vested within the probate court by the statutes of Ohio. Accordingly, the original order of the probate court here to return all of the settlement funds was proper, and in like manner any later modification of such order, which mandated the return of only the approved split fee, would be within the *in rem* subject matter jurisdiction of the probate court, to be determined *ex parte* by such court. The law as pronounced by this court in *State ex rel. Ballard v. O'Donnell* (1990), 50 Ohio St.3d 182, 553 N.E.2d 650, is not applicable to the facts of this case. In the first instance, *Ballard* was not a probate court matter, nor did the issues or the opinion deal with a guardianship estate or the funds coming into such an estate from a settlement for a ward. *Ballard* dealt with a common pleas court's entering an award of punitive damages against an attorney for a defendant corporation, which attorney had not been a party to the civil proceeding and who had never been served with process or appeared before the court in that proceeding. This court properly held in that case that no jurisdiction had ever been obtained over the person of the attorney Ballard.

Here, as the court of appeals properly found, the March 2, 1988 order was based upon an *in rem* proceeding. Further, the court of appeals found that any due process necessitated within this matter has been provided when the probate court notified the appellant by certified mail of the hearing to be conducted on October 25, 1988. Appellant's argument that he failed to appear because he objected to the probate court's exercise of jurisdiction fell upon deaf ears in the appellate court. I, in like manner, am deaf to this plea. As appropriately noted by the opinion below, " 'One who defies the public authority and wilfully refuses his obedience does so at his peril,' " quoting *United States v. United Mine Workers of America* (1947), 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884, 918.