OPINION
Plaintiff-appellant GFS Leasing Management, Inc., dba Altercare of Louisville, appeals from the December 6, 2000, Judgment Entry of the Canton Municipal Court which granted Summary Judgment in favor of defendant-appellee Vicki L. Dayton, Guardian, et al.
 STATEMENT OF THE FACTS AND CASE
On August 2, 2000, plaintiff-appellant GFS Leasing Management, Inc. dba Altercare of Louisville [hereinafter appellant] filed a Complaint against defendants-appellees Vicki L. Dayton, Guardian of the estate of Martin Hooper and Vicki L. Dayton, individually. In the Complaint, appellant claimed that it was due $9,713.24 on account for care and services rendered to Martin Hooper. Appellee Vicki L. Dayton was the niece and guardian of Martin Hooper.
Appellant alleged that on or about December 2, 1994, Vicki L. Dayton executed a Contract for Admission and Care/Agreement for Care with appellant guaranteeing to pay for Martin Hooper's care from "Mr. Hooper's income or resources." Appellant attached a copy of the account and the contract for care and services to the Complaint.
Appellant further alleged that on December 2, 1994, Vicki L. Dayton executed an Agreement/Use of Resident Funds agreeing to pay over to the nursing home "all funds, belonging directly or indirectly to [Martin Hooper] to which [Dayton] had legal access". Appellant alleged that Dayton had failed to make payment on the account. A copy of the agreement was attached to the Complaint.
Appellant's Complaint sought judgment against Vicki L. Dayton in her fiduciary capacity as well as individual capacity in the sum of $9,713.24, together with late charges due thereon and costs.
On September 6, 2000, appellee Vicki L. Dayton filed an Answer, in both her guardian and individual capacities. On November 15, 2000, appellee filed a Motion for Summary Judgment. Appellant's brief in opposition to the Motion for Summary Judgment was filed on November 29, 2000.
Thereafter, on December 6, 2000, the trial court filed a Judgment Entry in which it granted appellees' Motion for Summary Judgment.
It is from the December 6, 2000, Judgment Entry of the Canton Municipal Court that appellant presents this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRONEOUSLY APPLIED THE REQUIREMENTS OF CIVIL RULE 56(C) AND FURTHER ERRED BY GRANTING THE MOTION FOR SUMMARY JUDGMENT.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN BASING ITS DECISION ON OHIO REVISED CODE SECTION 2111.51.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164
(citing Dresher v. Burt (1966), 75 Ohio St.3d 280, 662 N.E.2d 264). It is based upon this standard that we review appellants' assignments of error.
 I
Appellant sought payment of Martin Hooper's account with Altercare of Louisville, a nursing home facility, from Vickie L. Dayton in her capacity as Mr. Hooper's guardian and in her individual capacity. Appellant's claims were based upon two contracts signed by Dayton. First, appellant argues that a genuine issue of material fact exists because Dayton may have signed the contract as Hooper's niece, in an individual capacity thereby making her personally liable. Further, appellant asserts that Dayton agreed that all of Hooper's funds which came into Dayton's possession would be used to pay charges on behalf of Hooper. Appellant claims Dayton violated that agreement when she paid herself guardian fees while a balance remained on Hooper's account at the nursing home. In essence, appellant argues that this is a matter of contract law and that appellant breached the agreements to which she entered with appellant.
First, we will address whether Dayton entered the agreements in question as Hooper's guardian or in her individual capacity. We find that Dayton entered the contracts as Hooper's guardian.
It is undisputed that Dayton was the duly appointed guardian of Hooper. The contracts in question identified Dayton as such, even though they did also identify Dayton's familial relationship as Hooper's niece as well. Further, in compliance with R.C. 2111.151[1], Dayton signed the documents, placing the phrase "legal guardian" after her signature. Lastly, Dayton checked the line for "legal guardian" on the "Use of Residents Funds" contract, as provided for on appellant's contract. We find that it is clear and unambiguous that Dayton signed these documents in her capacity as guardian.
As to whether the Guardian breached the contract she entered with appellant, appellant claims that the nursing home should have been paid before the guardian was paid guardianship fees.[2] First, we note that under Ohio law, a guardian is entitled to compensation for their services. See Sup. R. 73; Stark County Local Rule 42.1. These fees are determined by the Probate Court administering the guardianship. Id. Next, we note that Ohio law does not establish a priority by which the guardian and Probate Court are to pay competing debts, should the ward have more debts than assets. However, it is the probate court that is the superior guardian and the guardian, Ms. Dayton in this case, is deemed an officer of the court. In re Guardianship of Jadwisiak (1992),64 Ohio St.3d 176, 593 N.E.2d 1379. It is the probate court which controls the guardian's conduct and oversees the payment of the ward's debts. Ohio Dept. of Mental Health v. Baldauf (1995), 107 Ohio App.3d 467,473, 669 N.E.2d 39. R.C. 2101.24(A)(1)(e).
With the above noted facts in mind, we now turn to the language of the contract in question. The contract entered into between the nursing home (appellant) and the Guardian (appellee) stated the following: "The undersigned [guardian] will use any and all funds belonging directly or indirectly to the Resident, which the undersigned has legal access to on behalf of the Resident, to promptly and unconditionally pay the Facility [appellant] for all charges for room and care provided to the Resident. . . ." If this clause of the contract is read literally, the contract would seem to be an agreement to use "any and all" funds of the Resident, including funds that could be used to pay the Guardian's compensation, other costs of administering the guardianship or even other competing debts, to pay the nursing home charges.
It is well-established that the interpretation of a written agreement is a matter of law to be determined by the court. Alexander v. BuckeyePipe Line Co. (1977), 49 Ohio St.2d 158, 359 N.E.2d 702, paragraph one of the syllabus. The purpose of contract construction is to determine and effectuate the intent of the parties. Skivolocki v. East Ohio Gas Co. (1974), 38 Ohio St.2d 244, 313 N.E.2d 374, paragraph one of the syllabus. "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 245-246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.
We find that to give the phrase "any and all" its plain meaning, to include all funds of the ward that the guardian has access to, produces a manifest absurdity. We find that the terms of the contract must be limited to the context in which it was entered to avoid this absurdity. It was clear that the Resident, Mr. Hooper, had a guardian. It is common knowledge that a guardianship has fees and costs associated with it including probate court costs, guardian compensation and, possibly, as in this case, attorney fees. Further, it is foreseeable that Mr. Hooper could incur other debts, such as doctor fees, ambulance or medical transportation costs or pharmacy expenses not otherwise included in the charges of the nursing home. If the contract language of "any and all" was taken literally, the Guardian could pay none of these expenses but would be required to pay all of the ward's money to the nursing home for any charges incurred. We find such a literal interpretation absurd.
We find that the contract language must be read to have formed a contract by which the guardian agreed to pay the nursing home charges within the constraints and responsibilities of her duties as guardian and within the applicable laws of guardianships in Ohio. Only when understood in this context does one avoid an absurd result.
We note that to hold otherwise would have a harmful impact upon the public good. Guardians play an increasingly important role in our society because people are living longer. An ever increasing portion of the population consists of the elderly and infirmed. Guardians are necessary to care for those who cannot care for themselves. Guardians must see that a ward's physical and financial concerns are tended to. Reasonable compensation must be provided for a guardian or few would be willing to take on the responsibility. In addition, service providers (such as the nursing home sub judice) need guardians because guardians often select nursing care facilities and guardians see that the facilities are paid. To find that such an seemingly innocuous and boiler plate contract waived a guardian's reasonable compensation, as set and determined by a probate court, would discourage persons from taking on the responsibility of performing as a guardian. We find that this boiler plate language is routinely interpreted to allow for payment of reasonable guardian fees as determined by the Probate Court.
We find that appellee was entitled to a judgment as a matter of law. Appellant's first assignment of error is overruled.
 II
Appellant argues that this matter must be remanded because the trial court based its decision upon an incorrect statute, namely R.C. 2111.51. As noted previously, the correct statute is R.C. 2111.151. A review of the trial court's decision makes it clear that the trial court considered and applied R.C. 2111.151. However, in light of our holding in assignment of error I, we find appellant's argument meritless.
Appellant's second assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed. Costs to appellant.
Edwards, P.J. Farmer, J. and Wise, J. concur.
[1] 2111.151 LIMITATION ON LIABILITY OF GUARDIANS AND CONSERVATORS ON CONTRACTS AND DEBTS:
 (A) If a guardian of the estate, a guardian of the person and estate, a guardian of the person, or a conservator enters into a contract in the representative capacity of the guardian or conservator, if the contract is within the authority of the guardian or conservator, and if the guardian or conservator discloses in the contract that it is being entered into in the representative capacity of the guardian or conservator, the guardian or conservator is not personally liable on the contract, unless the contract otherwise specifies. If the words "guardian," "as guardian," "conservator," "as conservator," or any other word or words indicating representative capacity as a guardian of the estate, a guardian of the person and estate, a guardian of the person, or a conservator are included in a contract following the name or signature of the guardian or conservator, the inclusion is sufficient disclosure for purposes of this division that the contract is being entered into in the guardian's representative capacity as guardian of the estate, guardian of the person and the estate, or guardian of the person or is being entered into in the conservator's representative capacity as conservator.
[2] We do not understand appellant's argument to be that the guardianship fees, as determined by the Stark County Probate Court, pursuant to Sup. R. 73 and Stark County Local Rule 42.1, were too high. However, if appellant had raised such a challenge, that challenge should have been brought in the Stark County Probate Court.