DECISION AND JUDGMENT ENTRY
¶ 1 This is an appeal from an Adams County Common Pleas Court, Probate Division, judgment that ordered Firooz T. Namei, appellant herein, to repay a portion of the attorney fees he previously withheld from a personal injury settlement to the guardianship of Therron Freeman.
¶ 2 Appellant's brief posits no assignments of error as required by App.R. 16(A)(3).[1] However, in the brief's table of contents does set out the following argument "sub-headings" which we will treat in the interests of justice as assignments of error:
FIRST ASSIGNMENT OF ERROR:
 ¶ 3"THE COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING THE APPELLEES AN EQUITABLE REMEDY WITHOUT FIRST ASCERTAINING THE MERITS OF APPELLANT'S ALLEGATIONS THAT APPELLEES DID NOT COME WITH `CLEAN HANDS.'"
 SECOND ASSIGNMENT OF ERROR:
 ¶ 4 "THE COURT BELOW VIOLATED THE PROCEDURAL DUE PROCESS RIGHTS OF THE APPELLANT WHEN IT CONDUCTED THE HEARING IN SUCH A MANNER AS TO DENY THE APPELLANT A REASONABLE OPPORTUNITY TO REBUT THE ALLEGATIONS AGAINST HIM."
 THIRD ASSIGNMENT OF ERROR:
 ¶ 5 "THE COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING THE APPELLEES' MOTION TO COMPEL RETURN OF FEES WHEN, EVEN IF ALL OF APPELLEES' ALLEGATIONS WERE PROVED TRUE, APPELLANT WOULD, BY ITS CONDUCT IN THE MATTER AT ISSUE, STILL BE ENTITLED TO QUANTUM MERUIT PAYMENT EQUAL OR GREATER THAN THE FEE RECEIVED."
 ¶ 6 On August 22, 1997, Therron Freeman (DOB 1-8-93) sustained severe personal injury when struck by a Schwan Sales Enterprises delivery truck. Robin Freeman, Therron's father, retained the law firm of McKinney Namie to represent their interests against Schwan.[2] The firm entered into negotiations with Schwan's insurance company and, apparently, agreed to a $75,000 settlement.[3]
 ¶ 7 On October 7, 1998, appellant, a McKinney Namie partner, filed an application on behalf of Robin Freeman and asked the Probate Court to appoint Robin Freeman as guardian of Therron's person and estate. The court did not immediately act on the application, as the Probate Court could not obtain service of process on Therron's mother. Nevertheless, on November 19, 1998, CNA Insurance Company (CNA) issued a check payable to "Robin Freeman, Guardian of Therron Freeman and McKinney Namei: His Atty." The check was negotiated and the funds deposited in the firm's account. From those proceeds, appellant retained $26,467.68 for attorney fees and expenses, and then issued a $18,532.32 check payable to "Robin Freeman, Guardian of Therron Freeman." It is unclear from the record what became of those proceeds (and later what became of Robin Freeman) but the money did not find its way into any guardianship account for Therron. Subsequently, in June of 1999, Robin Freeman sought new counsel and appellant withdrew from the case.
¶ 8 On August 31, 2000, a motion was filed that asked appellant and CNA to disclose the existence and whereabouts of the settlement proceeds.[4] On May 9, 2001, a new application asked the Probate Court to appoint Michael Kelly as guardian of Therron's estate for purposes of resolving the personal injury claim and managing the proceeds. Therron's parents, Robin Freeman and Janet Dummitt, both consented to this appointment. On June 14, 2001, the trial court officially appointed Michael Kelly as guardian.
¶ 9On September 28, 2001, the guardian asked the trial court to compel appellant to return the $26,467.68 in attorney fees and expenses he retained from the settlement. The basis for the motion was that a proper guardianship had not been established and appellant had no authority to settle the claim. Further, the guardian alleged that appellant delivered the remaining proceeds, after withholding attorney fees and expenses, to Robin Freeman without ensuring that the proceeds be deposited in a guardianship account for Therron's benefit. Appellant's memorandum in opposition argued that (1) the Probate Court gave "constructive approval" to settle the personal injury case and (2) Robin Freeman did not have "clean hands" and, in fact, had "his eyes on his son's money from the beginning."
¶ 10 At the March 1, 2002 hearing, appellant repeatedly maintained that a guardianship had been established at the time the CNA check was negotiated. Although no formal judgment entry appointed Robin Freeman as Therron's guardian, appellant argued that Freeman was a "constructive" guardian because no objections had been lodged to the initial application and that Freeman's appointment would have simply been a "matter of course." Appellant also claimed that the proceedings constituted a "corrupt conspiracy" to get an "out of town attorney." The Probate Court was not impressed with either argument and on March 27, 2002, rendered judgment that partially sustained the guardian's motion for return of the attorney fees. The Court found that appellant "failed in his duties as an officer of the Court and by reason thereof, [guardianship] assets were not properly protected." However, rather than order the return of all attorney fees and expenses as the guardian had requested, the Court ordered appellant to repay the guardianship $18,532.32 which represents the amount wrongly delivered to Robin Freeman. This appeal followed.
 I ¶ 11 Before we consider the assignments of error on their merits, we first address a threshold jurisdictional problem. This Court has jurisdiction to review and affirm, modify or reverse "final orders" of inferior courts within our district. Section 3(B)(2), Article IV, Ohio Constitution. The guardianship at issue in the case sub judice is clearly an ongoing concern and questions may arise as to whether a judgment regarding the repayment of attorney fees constitutes a "final order" and provides this court with jurisdiction to review the judgment.
¶ 12 In order to determine if the judgment is final and appealable, we turn to R.C. 2505.02 which specifies that a final order is one which, inter alia, affects a substantial right and is entered in a special proceeding. Id. at (B)(2). Judicially appointed guardianships under R.C. Chapter 2111 are considered special proceedings. See 53 Ohio Jurisprudence 3d (2001) 47, Guardian and Ward, § 37. Further, the order in question requires appellant to repay the guardianship in excess of $18,000 in attorney fees. We believe this order affects a substantial right and, thus, we find that the judgment is final under R.C.2505.02(B)(2). Accordingly, we have jurisdiction to review the matter.[5]
With that in mind, we turn our attention to the "assignments of error."
 II ¶ 13 Appellant argues in his first assignment of error that the trial court erred in granting "appellees" an "equitable remedy" without first ascertaining the merits of his allegations that "[a]ppellees "did not come to the proceeding with `clean hands.'" We find no merit in his contention.
¶ 14 Assuming arguendo that the order to repay the attorney fees was equitable rather than legal,[6] appellant does not identify the specific "appellees" nor does he clearly explain how they have "unclean hands." We note that the guardian, on behalf of the guardianship, asked the trial court to compel appellant to return the attorney fees and expenses. We find nothing in the record to suggest any misconduct by Michael Kelly, the guardian, or the guardianship itself.
¶ 15 While not entirely clear in his brief, the "unclean hands" that appellant seems to refer are those of Robin Freeman and the attorney who represented him after appellant withdrew from the case. We acknowledge that Robin Freeman apparently engaged in misconduct. We are not persuaded, however, that the same can be said of his subsequent counsel. In any event, misconduct committed by either of those people is irrelevant for the purposes of this appeal. They are not the entity to which appellant must repay the attorney fees. Thus, they are not "appellees" for purpose of this argument.
¶ 16 For these reasons, we hereby overrule appellant's first assignment of error.
 III ¶ 17 Appellant argues in his second assignment of error that the Probate Court violated his due process rights by conducting the hearing in such a manner as to deny him "a reasonable opportunity to rebut the allegations against him." We, however, have carefully reviewed the record, including the transcript of proceedings, and find no due process violation.
¶ 18 The fundamental requirements of due process are notice and an opportunity to be heard at a meaningful time and manner. See State v.Hochhausler (1996), 76 Ohio St.3d 455, 459, 668 N.E.2d 457; In reAdoption of Zschach (1996), 75 Ohio St.3d 648, 653, 665 N.E.2d 1070. The guardianship filed its motion on September 28, 2001. A hearing was initially set for December 5th of that year. The trial court continued the hearing, at appellant's request, to March 1, 2002. This provided appellant with more than five (5) months notice.
¶ 19 Nevertheless, appellant objects to appellees "waiving the presence" of Robin Freeman which supposedly deprived him "of any meaningful opportunity to determine on the record the true nature of Freeman's conduct and motives in regard to his son's interests which were the foundational issue of these proceedings." We believe, however, that if appellant desired Robin Freeman's presence at the trial court proceeding, appellant could have subpoenaed Freeman. Freeman's absence cannot be blamed on appellees and cannot be characterized as a due process denial.
¶ 20 Appellant also argues that the Probate Court erroneously refused to allow into evidence a letter from CNA regarding an annuity for Therron. The decision to admit or to exclude relevant evidence lies in the sound discretion of the trial court and that decision will not be reversed on appeal absent a showing of an abuse of discretion. See Petersv. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290;Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056; Statev. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, at paragraph two of thesyllabus. An abuse of discretion is more than an error of law orjudgment; it implies that the court's attitude is unreasonable, l1arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying thisstandard, appellate courts are admonished that they should not tosubstitute their judgment for that of the trial court. See State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732,654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181; Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301. Indeed, to show an abuse of discretion, the result mustbe so palpably and grossly violative of fact or logic that it evidencesnot the exercise of will but the perversity of will, not the exercise ofjudgment but the defiance of judgment, not the exercise of reason butinstead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 ¶ 21 The letter to which appellant refers does not appear to have any bearing on the issue of whether appellant wrongfully delivered a portion of the settlement proceeds to Robin Freeman. Thus, we find no error in the Probate Court's decision to exclude that evidence, let alone an abuse of discretion or violation of appellant's procedural due process rights.
¶ 22 For these reasons, we hereby overrule appellant's second assignment of error.
 IV ¶ 23 Appellant argues in his third assignment of error that the trial court erred in ordering repayment of attorney fees because even if he negligently disbursed assets to Robin Freeman, appellant is entitled "to quantum meruit payment equal or greater than the fee received." We are not persuaded.
¶ 24 Appellant's argument posits two separate issues: first, did the Probate Court err in ordering him to repay attorney fees; and second, was appellant entitled to quantum meruit irrespective of that order. We address these arguments individually.
¶ 25 We are unconvinced that the Probate Court erred by ordering appellant to repay a portion of his attorney fees. Attorney fees "may be drawn from [a] ward's estate only after the probate court approves thefees." (Emphasis added.) In re Guardianship of Jadwisiak (1992),64 Ohio St.3d 176, 181, 593 N.E.2d 1379. Thus, a probate courtappointment is required to settle a minor's personal injury claim or todistribute a judgment. See, generally, R.C. 2111.18.[7]It is uncontroverted in the case sub judice that a guardianship had notbeen created and that the trial court did not approve an attorney fee award.Therefore, appellant wrongfully withheld attorney fees and the ProbateCourt, acting in the best interest of the ward and his estate, properlyordered repayment. Moreover, the trial court could have ordered allof the fees repaid and required appellant to petition the Court for payment.
¶ 26 Once again, no guardianship existed when appellant and CNA agreed to the proposed settlement. Thus, no guardian existed who could have settled the claim for purposes of the statute. More important, the Adams County Probate Court did not approve the settlement. Given these deficiencies, appellant should not have accepted the CNA check and then disbursed in excess of $18,000 to Therron's father who, apparently, did not deposit those sums in an account for his son and is currently nowhere to be found. Because the loss of funds was caused, in part, by appellant's own actions, we find nothing inappropriate in the Probate Court's decision that appellant should replace those funds. This is particularly true in light of the fact that appellant did not obtain court approval to retain any of the attorney fees.
¶ 27 It is unclear whether appellant still maintains that even if a formal guardianship had not been created, a "constructive" guardianship existed. If so, we find this argument without merit. Recently, this Court rejected the concept of a "de facto guardianship." See In Re Guardianshipof Hinerman (Nov. 1, 2001), Hocking App. No. 00CA1. We reject a "constructive guardianship" for the same reasons. Probate courts have limited jurisdiction, and have authority over guardianships that are established in compliance with R.C. Chapter 2111.
¶ 28 Appellant also claims that he and his firm had the Probate Court's "constructive approval" to settle the personal injury claim. Though we are not entirely sure what appellant intends by "constructive approval," we note that courts act only through their journal entries, not by oral pronouncements or other forms of assurance. See Gaskins v.Shiplevy (1996), 76 Ohio St.3d 380, 382, 667 N.E.2d 1194; State v. King(1994), 70 Ohio St.3d 158, 162, 637 N.E.2d 903; Schenley v. Kauth(1953), 160 Ohio st. 109, 113 N.E.2d 625, at paragraph two of thesyllabus. Until such time as the court formally approved the settlement,there was no approval, constructive or otherwise.
 ¶ 29 Appellant's second argument concerning his claim for quantum meruit is equally unavailing. Quantum meruit is the measure of damages afforded in an action for quasi-contract. Black's Law Dictionary (5th Ed. 1981) 1119. Quasi-Contract is a legal fiction created to prevent an unjust enrichment when a benefit is conferred by a plaintiff onto a defendant with knowledge by the defendant of that benefit and the retention of that benefit under circumstances when it would be unjust to do so without payment. Novomont Corp. v. Lincoln Elec. Co. (Nov. 1,2001), Cuyahoga App. No. 78389; Wild-Fire, Inc. v. Laughlin (Mar. 9,2001), Clark App. No. 2000CA51. However, an action in quasi-contractgenerally does not lie in circumstances when the subject matter of theclaim is covered by an express contract. Johnson v. Kappeler (Dec. 28,2001), Miami App. No. 01CA26; McManamon v. H R Mason Contractors,Inc. (Sep. 13, 2001), Cuyahoga App. No. 79014.
 ¶ 30 In his memorandum contra motion to compel return of attorney fees, appellant conceded that he and his firm had represented Robin Freeman and his son under a contingent fee agreement. Appellant attached a copy of that agreement to the memorandum. Thus, because there was an actual contract regarding appellant's representation existed in this matter, appellant cannot recover in an action on quasi-contract.[8]
 ¶ 31 We also emphasize that the Probate Court's decision was not based on whether appellant was entitled to attorney fees, but whether estate assets that were wrongfully taken from the guardianship must be restored. The Probate Court did not find that appellant was not entitled to the contingent fee. Rather, the court found that appellant failed in his duties to protect guardianship assets and, thus, was liable to replace those assets. In light of the fact that probate courts act as "superior guardian" in these matters, In re Jadwisiak, supra at 180, we find no error in the instant case in the Probate Court acting to protect Therron's assets.
¶ 32 For these reasons, we hereby overrule appellant's third assignment of error. Having reviewed all the errors assigned and argued in the briefs, and finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[1] Because appeals are reviewed and decided on the basis of the errors assigned in a brief, see App.R. 12(A)(1)(b), there is technically no basis on which to review this case and we should summarily affirm the Probate Court's judgment. Nevertheless, in the interest of justice, we will review the merits of appellant's arguments to the extent we understand them.
[2] The uncontroverted evidence revealed that Therron's mother had custody of Therron at the time of the accident. It is unclear why she was not involved in the personal injury claim.
[3] No definitive statement appears in the record as to the actual amount of the settlement. However, both sides to this appeal operate on the basis that the settlement proceeds totaled $75,000.
[4] Interestingly, Robin Freeman joined in this motion along with Therron's mother, Janet Dummitt, and a guardian ad litem appointed to protect Therron's interest.
[5] Although the Court's judgment entry contained a Civ.R. 54(B) finding of "no just reason for delay," this provision does not, standing alone, convert a non-final appealable order to a final appealable order. Rather, judgments must satisfy both Civ.R. 54(B), where applicable, and R.C. 2505.02. See State ex rel. Wright v. Ohio Adult Parole Auth.
(1996), 75 Ohio St.3d 82, 85, 661 N.E.2d 728; Chef Italiano Corp. v. KentState University (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, at the syllabus. A finding of "no just reason for delay" will not make a judgment appealable if it does not also satisfy the provisions of R.C.2505.02. See McCabe/Marra Co. v. Dover (1995), 100 Ohio App.3d 139, 160,652 N.E.2d 236; Palmer v. Westmeyer (1988), 48 Ohio App.3d 296, 302,549 N.E.2d 1202; Douthitt v. Garrison (1981), 3 Ohio App.3d 254, 255,444 N.E.2d 1068.
[6] The Ohio Supreme Court has held that R.C. 2111.18 vests Probate Courts with the inherent power and control over settlement proceeds in a ward's estate. See In re Guardianship of Jadwisiak (1992),64 Ohio St.3d 176, 181, 593 N.E.2d 1379. This includes exercising authority over attorney fees paid from those proceeds. Id. Because the Court's power is based in statute, one may suggest that the power is legal in nature rather than equitable. In any event, for purposes of this assignment of error we assume that the Probate Court exercised its equitable power.
[7] ¶ a R.C. 2111.18 provides:
 ¶ b "When personal injury . . . is caused to a ward by wrongful act, neglect, or default that would entitle the ward to maintain an action and recover damages for the injury . . . and when any ward is entitled to maintain an action for damages or any other relief based on any claim or is subject to any claim to recover damages or any other relief based on any claim, the guardian of the estate of the ward may adjust and settle the claim with the advice, approval, and consent of the probate court." (Emphasis added.)
[8] We are cognizant of the decision in Reid, Johnson, Downes,Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570,629 N.E.2d 431, wherein the Ohio Supreme Court held that when an attorney representing a client pursuant to a contingent fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency. Id. at paragraph two of the syllabus. In that case, however, a law firm was discharged in the middle of a personal injury action, before recovery for the client, and the question was how to compensate that firm for their work on the matter to that point. Here, the contingent contract was fully executed as appellant recovered a settlement, wrongfully agreed to or not, for his client.