OPINION
{¶ 1} Appellant-ward James E. Goins, Jr. appeals the decision of the Mahoning County Probate Court which established a guardianship over his estate to preserve his present and future assets during his incarceration. We are presented with issues concerning whether appellant was incompetent under the guardianship statutes, whether appellant was denied the right to choice of counsel in his criminal case, and whether this case commenced in the proper venue due to his incarceration in a different county. For the following reasons, the judgment of the probate court is affirmed.
 STATEMENT OF FACTS {¶ 2} Appellant was born August 12, 1984. Thereafter, his father died in an accident in Texas. A structured settlement was created for appellant as a result. One $200,000 payment was made to appellant's mother for his use and benefit. The remainder of the settlement was to be paid to appellant in various installments and lump sum payments starting when he turned eighteen and continuing throughout his lifetime. A guardianship was established over appellant's funds. A house in Youngstown was purchased in appellant's name.
 {¶ 3} In March 2002, appellant was sentenced to more than eighty-five years in prison after being convicted of attempted aggravated murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. Various civil lawsuits have been filed against him by individuals such as victims of his crimes. He has also been ordered to pay for the cost of his prosecution.
 {¶ 4} Appellant turned eighteen on August 12, 2002, causing the guardianship to terminate automatically. On that date, the guardian, Butler Wick Trust Company, filed an application for appointment of a guardian over appellant's estate at the probate court's prompting. The application estimated appellant's estate to contain $155,000 in personalty and $15,000 in realty. A hearing was set for August 23, 2002 on this application.
 {¶ 5} On August 14, 2002, the probate court appointed Butler Wick as an emergency guardian for seventy-two hours under R.C. 2111.02(B)(3). Also on August 14, Butler Wick filed a motion for expansion of the emergency guardianship for an additional period of thirty days. Butler Wick revealed that one victim-civil plaintiff had filed a motion for prejudgment attachment in the general division. Butler Wick noted that if the attachment is granted, then the funds it possesses cannot be used in appellant's criminal defense/appeal. The court set a hearing for August 16 to deal with the propriety of an extension of the emergency guardianship.
 {¶ 6} Because appellant was incarcerated in Madison County at that time, the probate court caused appointment of a probate investigator in that county to serve appellant and file a report. The investigator interviewed appellant and explained his rights on August 15 and filed his report that day. According to the report, appellant consented to a guardianship being established but wanted his mother to be the guardian. Appellant also indicated that he would like his mother and Attorney Kovoor to be present at the August 23 hearing. (It appears that Attorney Kovoor entered into a civil settlement on appellant's behalf with a victim from the criminal case on August 15 for $1,000,000, even though it is the function of the attorney for the guardianship to defend the ward in civil actions and even though an emergency guardian was appointed on August 14.)
 {¶ 7} On August 16, 2002, Attorney Kovoor filed a memorandum in opposition to the emergency guardianship and extension of the same. First, the memorandum argued a lack of subject matter jurisdiction because the guardianship terminated by operation of law at age eighteen; apparently, counsel mistakenly believed that the court continued or extended the prior, minority guardianship and failed to realize that the court established a new guardianship unrelated to the minority guardianship. The memorandum also argued that venue rested in Madison County and that incarceration does not deprive an inmate of the capacity to contract.
 {¶ 8} That day, the probate court held a hearing on the motion and released a judgment entry that extended the emergency guardianship for thirty days. The entry stated that Butler Wick presented arguments through its counsel and that appellant's counsel chose to rest upon the allegation of her pleadings. The court noted that no objections were voiced as to the investigator's report which found appellant consented to a guardianship.
 {¶ 9} On August 23, 2002, the hearing proceeded on Butler Wick's application for appointment as guardian. That same day, the probate court released an entry granting the application. The court found by clear and convincing evidence that appellant was incompetent by reason of incarceration, that a guardianship is necessary to take proper care of his property and is in his best interest, and that there is no less restrictive alternative. Timely notice of appeal was filed on appellant's behalf.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 10} Appellant sets forth three assignments of error, the first of which provides:
 {¶ 11} "The trial court erred in imposing, sua sponte, an `emergency guardianship' on the property of James E. Goins, Jr., a major, and further erred in extending that `emergency guardianship' and thereafter in imposing a permanent guardianship of his property, all where the sole ground alleged for his `incompetence' is his incarceration in a state penal institution."
 {¶ 12} First, appellant argues that the court could not have been impartial because it ordered Butler Wick to file an application for a guardianship. Nonetheless, R.C. 2111.02(A) specifically allows the probate court to appoint a guardian on its own motion. Hence, this argument is without merit.
 {¶ 13} Next, appellant posits that the mere fact that a person is incarcerated does not make him incompetent. Appellant notes there was no evidence of any grounds supporting a finding of incapacity other than incarceration.
 {¶ 14} A party must raise arguments to the trial court to preserve them for appeal. Any arguments below on this matter were vague and conclusory. In any case, appellant consented to a guardianship over his estate.
 {¶ 15} Furthermore, although appellant correctly argues that an incarcerated person may contract and dispose of property, such doctrine and case law does not relate to an inmate over whom a guardianship has been established. In fact, the case cited in appellant's brief specifically pronounces that guardianship law was not at issue. We shall now turn to the guardianship law which is relevant in the case before us.
 {¶ 16} Under R.C. 2111.02(A), the probate court shall appoint a guardian for an incompetent when found necessary. As aforementioned, appellant only takes issue with the incompetent portion of these criteria for appointment. Hence, we turn to the definition of incompetent contained in the immediately preceding statute, R.C. 2111.01(D). Pursuant to this statute, as used in the guardianship statutes, "`Incompetent'means any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that he is incapable of taking proper care of himself or his property or fails to provide for his family or other persons for whom he is charged by law to provide, or any person confinedto a correctional institution within the state." R.C. 2111.01(D) (Emphasis added).
 {¶ 17} In accordance with the plain language of the statute, a person is incompetent for purposes of R.C. 2111.02(A) merely because he is confined to a correctional institution within the state. Since the only argument before us concerns what the law as written requires, there is nothing presented for this court to review except the above plain language. Appellant clearly falls under that plain language. As such, this argument is overruled.
 {¶ 18} We note that contrary to appellate counsel's contentions, this does not mean that the probate court can appoint guardians for every inmate. Rather, an inmate can only be subjected to a guardianship if someone moves for appointment and if appointment is found to be necessary. We also note appellant does not raise any arguments concerning the constitutionality of the inclusion of a prisoner in the definition of incompetent. Failure to raise the constitutionality of a statute or its application at the trial level constitutes waiver on appeal. State v.Awan (1986), 22 Ohio St.3d 120. Here, the issue is not raised below or on appeal.
 {¶ 19} Lastly, appellant contends that the court considered no evidence concerning a less restrictive alternative. Pursuant to R.C.2111.02(C), "(5) Evidence of a less restrictive alternative to guardianship may be introduced, and when introduced, shall be considered by the court; (6) The court may deny a guardianship based upon a finding that a less restrictive alternative to guardianship exists."
 {¶ 20} As appellee repeatedly points out, appellant did not properly present this court with a proper transcript of either hearing. The praecipe states that the record will include "a complete transcript pursuant to App.R. 9(B), which I have ordered. See below." Thereafter, the court reporter's acknowledgment is left blank even though it states that it "MUST BE COMPLETED BY COURT REPORTER AND ATTACHED TO NOTICE OFAPPEAL." (Emphasis sic.) Under the reporter's blank acknowledgment is a handwritten notation initialed by Attorney Kovoor which states, "Received Transcript." The civil docketing statement also advises that a transcript is to be filed. A copy of one transcript from the August 23 hearing is attached to appellant's brief in an appendix. However, the transcript was never filed with the court in this appeal.
 {¶ 21} Even if we were to review this transcript, it shows no introduction of evidence or arguments on a less restrictive alternative and even contains an admission that appellant's mother should not be appointed guardian. No nomination of a different guardian was filed. See R.C. 2111.121(A). There is no other indication that appellant introduced evidence of a less restrictive alternative. For instance, the memorandum filed below mentions no less restrictive alternative besides merely arguing that appellant has capacity to contract. Additionally, there was no indication that appellant wished to withdraw his consent to appointment of a guardian.
 {¶ 22} Under a plain reading of the statute, where no evidence on less restrictive alternatives is introduced, there is no duty of the court to consider such alternatives. In any event, the court's entry states that it considered whether any less restrictive alternatives exist and found that none did. Further, even if one did exist, the statute's language on utilizing the less restrictive alternative is permissive. In any case, appellant consented to the guardianship. For all of the foregoing reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 23} Appellant's second assignment of error contends:
 {¶ 24} "The trial court erred in denying James E. Goins, Jr., his personal choice of criminal defense and civil counsel and in imposing in lieu of that choice counsel selected with the court's approval by the guardian appointed by that same court sua sponte over Mr. Goins's property."
 {¶ 25} Under this assignment of error, appellant cites law dealing with the constitutional right to counsel. Then, he argues that appellant lost confidence in his criminal defense trial counsel but the probate court was forcing him to proceed on the direct appeal of the criminal case with his former trial counsel. There is no reference under this assignment to where or when the probate court allegedly determined that appellant must use prior defense counsel for his criminal appeal. App.R. 12(A)(2) states that the court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as mandated under App.R. 16(A)(6) and (7), which require appropriate references to the record and citations to the parts of the record on which the appellant relies.
 {¶ 26} Moreover, the judgment entry from which this appeal was taken does not decide or mention this issue. Although appointing new appellate counsel is often a wise decision in a serious criminal case due to appellate issues such as ineffective assistance of trial counsel, appellant does not direct us to any denial of or request for different criminal appellate counsel. As such, we cannot review this allegation at this time. Appellee notes that the criminal defense attorney was hired by appellant's mother and paid for by the guardianship as the guardian apparently considered it a "just debt" of the guardianship. As such, it is possible the guardian would consider new counsel for the appeal to be a just debt as well.
 {¶ 27} Although the text of the quoted assignment of error mentions both criminal and civil choice of counsel, there does not appear to be any arguments under the assignment supporting this choice of civil counsel issue. In any case, it is the duty of the guardianship to provide the ward with a defense in any civil actions filed against him. R.C.2111.14(C). See, also, In re Guardianship of Jadwisiak (1992),64 Ohio St.3d 176, 180 (stating, "the guardian can employ legal counsel to initiate or defend a lawsuit."). Typically, the ward cannot unilaterally hire counsel for civil cases other than that hired by the guardianship or approved by the probate court. The ward or his desired civil counsel could file a request for certain counsel to be hired to defend the ward in a civil action. However, there is no guarantee that desired counsel will be utilized, especially where it appears that prior counsel from when the ward was a minor had already entered appearances in certain civil suits. Once again, we point to App.R. 12 and 16, as no references to the record establish an express denial of the right to choice of civil counsel. Rather, the record before us deals with the propriety of a guardianship. As appellee points out, the only discernible entry dealing with civil counsel was from the prior guardianship which no longer exists, was not on appeal then, and is not on appeal now.
 {¶ 28} In conclusion, the choice of counsel issue, which is basically an argument concerning the constitutionality of the application of the guardianship statute to a prisoner, was not raised on the record below. Thus, the issue cannot be reviewed by this court on appeal. Awan,22 Ohio St.3d 120. Hence, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 29} Appellant's third and final assignment of error alleges:
 {¶ 30} "The trial court erred in instituting sua sponte guardianship proceedings against James E. Goins, Jr., in Mahoning County when Mr. Goins's county of residence is Madison County, where he is incarcerated for an extended period at a state penal institution."
 {¶ 31} At the time of the hearing, it appears that Goins was incarcerated in a prison in Madison County. Thus, his counsel argued below and argues now that the Mahoning County Probate Court lacked venue. Appellee notes that Goins is now located in a prison in Trumbull County and that prisoners are often moved within the state's prison system.
 {¶ 32} Relevant to this issue, R.C. 2111.02(A) provides that the person for whom the guardian is to be appointed shall be "a resident of the county" or have "a legal settlement in the county." Appellant argues that although he previously was a resident and had a legal settlement in Mahoning County, upon incarceration in Madison County in March 2002, he became a resident of that county.
 {¶ 33} Appellant cites some cases dealing with commitment which have attempted to interpret the residence and legal settlement options in the guardianship statute. Still, they do not necessarily support his position. One case defines the test as an intent to return test. See In reTripp (1993), 90 Ohio App.3d 209, 211. Appellant responds that he can form no intent to return due to his long sentence of more than eighty-five years. However, there is no indication that the intent must be realistic. Moreover, there is always a possibility of reversal of the conviction or portions of the sentence. There is no indication that appellant has lived anywhere but Youngstown. Furthermore, as appellee notes, appellant still owns the home in Youngstown that he has owned for some years.
 {¶ 34} The other case cited by appellant, opines that residence requires actual physical presence with intent to remain and legal settlement requires living in the area with some degree of permanency. Inre Guardianship of Fisher (1993), 91 Ohio App.3d 212, 215. Although commitment is similar to incarceration, neither case deals with incarceration. More importantly, neither case considered the persuasive authority of other appellate decisions or the application of certain Supreme Court decisions supporting a holding that incarceration does not change one's residence.
 {¶ 35} We shall start with the case law on the effect of incarceration that supports appellant's position; although, we note that appellant does not cite such case law. In dealing with a name change statute which requires the application to be filed in the county in which the person resides, the Fourth Appellate District allowed a prisoner to file the application in the county of incarceration. In re Hall (Aug. 10, 1999), 4th Dist. No. 98CA2443. According to that court, "Research reveals little in the way of authority as to whether a prisoner is a resident of the county where he is incarcerated." Id. The Fourth District thus holds that one may establish a residence "albeit involuntarily" for purposes of the name change statute. Id., citing In re Paxson (June 30, 1992), 4th Dist. No. 91CA2008. Yet, it should be noted that the court also opined that a person may have more than one residence. Id.
 {¶ 36} There are various divorce cases, which tend to contradict parts of the Fourth District's holdings. To file a divorce action in a certain county, one must be a resident of the state for six months and a resident of the county for ninety days. R.C. 3105.02; Civ.R. 3(B)(9).
 {¶ 37} In one case, a husband and wife were both convicted of aggravated murder and sentenced to death in 1976 in Lucas County, their county of residence; the husband's sentence was later commuted to life.Wernert v. Wernert (1991), 61 Ohio Misc.2d 436. (We emphasize these sentence lengths to contradict appellant's suggestion that residency can change based upon how long a person can expect to be incarcerated.) In 1990, wife, who was incarcerated in Union County, filed for divorce in Lucas County. Husband was incarcerated in Allen County. The trial court held that venue is the county of residence prior to incarceration rather than the county where the prison is located. Id. at 439, citing Gonzalezv. Gonzalez (Feb. 9, 1983), 9th Dist. No. 3384. "A change of residence must be voluntary, and involuntary incarceration alone will not effect change of residence." Id. at 439, quoting Bowers v. Baughman (1972),29 Ohio App.2d 277.
 {¶ 38} Also note that in the state habeas statutes, an inmate is prohibited from filing his petition in any county except the one of his incarceration. The statute uses this specific language rather than stating the place of his residence. R.C. 2725.03.
 {¶ 39} Finally, in State ex rel. Saunders v. Court of Common Pleasof Allen County, 34 Ohio St.3d 15, a prisoner who was incarcerated in Allen County filed for divorce in Cuyahoga County. The court in Cuyahoga County dismissed his complaint on the grounds that he was not a resident. Rather than appealing, the prisoner filed his complaint for divorce in Allen County. That court also dismissed the complaint stating that subject matter jurisdiction was lacking as he was not a resident solely by virtue of his incarceration in Allen County.
 {¶ 40} Once again, the prisoner failed to appeal. Rather, he filed a complaint for a writ of mandamus seeking to compel the Allen County Common Pleas Court to hear his complaint. The Supreme Court initially found that the prisoner had an adequate remedy at law by way of appeal. Id. at 15-16. The Court also advised that a writ will not issue to control judicial discretion. Id. at 16. Still, the Court stated, "[w]e pause to note, however, that relator's confusion is understandable." Id.
 {¶ 41} Thereafter, the Court made some revelations. The Court first noted that although the trial court described the issue as jurisdictional, it was actually a matter of venue. The Court explained that the six-month state residence requirement in divorce actions, "imposes a requirement for domicile in the sense of a permanent home, where one actually resides with intent to remain." Id. Regardless, the Court declared, "although sparse, precedent in this state indicates that this residence is not altered by imprisonment or other involuntary commitment." Id. (Emphasis added.)
 {¶ 42} The Saunders Court quoted Sturgeon v. Korte (1878),34 Ohio St. 525, 535, which stated in dictum:
 {¶ 43} "A person under confinement for crime can not adopt a new residence until discharged from imprisonment. Such disability is said to arise from the general principle that a person under the power and authority of another possesses no right, or is incapacitated, to choose a residence."
 {¶ 44} The Saunders Court also quoted, Murray v. Remus (App. 1925), 4 Ohio Law Abs. 7, motion to certify overruled (1925), 3 Ohio Law Abs. 690, 691, where that court held:
 {¶ 45} "Residence in a place, to produce a change of domicile, must be voluntary. If therefore it be by constraint of involuntary, as arrest, imprisonment, etc., the antecedent domicile of the party remains."
 {¶ 46} Additionally, the Saunders Court cited Bowers v. Baughman, (1972), 29 Ohio App.2d 277, which held that a psychopathic offender committed to a state hospital in Allen County could not gain residence in that county for purposes of divorce. From these above citations, the Supreme Court concluded that the prisoner could "establish no clear right to relief under present law." Saunders, 34 Ohio St.3d at 16 (Emphasis added.) The Court said that it could not definitively state that Cuyahoga was the proper county due to a lack of evidence but advised that if the prisoner lived in Ohio for six months prior to incarceration and in Cuyahoga for ninety days prior to incarceration, then Cuyahoga would be the appropriate place of filing.
 {¶ 47} Finally, the court referenced the "no available venue" exception in Civ.R. 3(B)(10), specifying the last resort filing place as being "in the county in which plaintiff resides * * *." The Court concluded that an incarcerated person could only file in the place of incarceration under Civ.R. 3(B)(10) if no other venue existed. Importantly, the Supreme Court noted a distinction between "resides" in Civ.R. 3(B)(10) and "resident" in Civ.R. 3(B)(9).
 {¶ 48} Resident is also the word used in R.C. 2111.02(A), the statute before this court. In line with the Supreme Court rationale inSaunders and the other cases cited above, we hold that the mere fact of incarceration in one county does not change one's residence or stop one from being a resident of the county where he was a resident prior to incarceration. As such, the Mahoning County Probate Court properly proceeded under R.C. 2111.02(A) as appellant does not dispute that he was a resident of Mahoning County prior to incarceration.
 {¶ 49} Finally, we summarily respond to any jurisdictional arguments which appellant seems to raise under this assignment in relation to termination of the guardianship upon reaching the age of majority. As mentioned in our recitation of the facts, it appears that at times, counsel fails to realize that the minority guardianship was not extended or reinstated. Rather, a new guardianship was established in August 2002 based upon incompetency; that new emergency guardianship was then extended; and then it was made "permanent."
 {¶ 50} For the foregoing reasons, the judgment of the probate court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.